UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2010 AUG -5 PM 3: 02

BY _____
DEPUTY CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. |
| ) | 1:10-cr-108 |
| DIANA GOKEY, and ) | |
| JEFFREY RICHARD ) | |
| Defendants ) | |

## INDICTMENT

The Grand Jury charges:

1. At all times relevant, Defendant DIANA GOKEY was a resident of Claremont, New Hampshire; she was the mother of Defendant JEFFREY RICHARD. RICHARD was a resident of Goshen, New Hampshire and Claremont, New Hampshire.

2. At all times relevant, Taylor Riff was a resident of Windsor, Vermont. She was the mother of A.R. and M.R., twin girls who were born in 2003 and who suffer from disabilities.

3. At all times relevant, the State of Vermont provided health care services to some of its low income residents pursuant to the federal Medicaid Program. The costs of the Medicaid program were shared by Vermont and the federal government. Medicaid is a health care benefit program, as defined in 18 U.S.C. § 24(b).

4. At all times relevant, as part of its Medicaid program, Vermont offered the Children's Personal Care Services program ("CPCS"). The goal of CPCS was to provide supplemental assistance with self-care and activities of daily living to Medicaid eligible children with significant disability or health conditions at home and in the community.

5. At all times relevant, CPCS provided families of eligible children with the option

of selecting the persons to provide CPCS care in their homes. If a CPCS family elected to manage the care received under the program in this fashion, the family utilized Aris Solutions, of White River Junction, Vermont, to process payroll, and take care of other employer responsibilities, such as conducting background checks, withholding employee taxes, and reporting taxes. In this capacity, Aris Solutions was a fiscal intermediary between the Vermont Medicaid program and the family-managed CPCS program participants.

6. At all times relevant, before a care giver could receive payment for providing CPCS care, Aris Solutions must have received a completed time sheet, signed by both the family-employer and the care-giver-employee indicating the dates and times during which the employee provided care to the CPCS beneficiary. Upon receipt of the time-sheet, Aris Solutions calculated the hours worked by the care giver and processed the payment to the employee, making the appropriate withholdings. The funding source for payments made from Aris Solutions to CPCS care-givers was the Vermont Medicaid Program.

7. During 2006, 2007, and 2008 A.R. and M.R. were eligible to receive care under the CPCS program.

8. From in or about June 2006 until in or about December 2008, in the District of Vermont, RICHARD and GOKEY did knowingly and willfully conspire with each other and with Riff to execute a scheme to defraud Vermont Medicaid, a health care benefit program, and to obtain by means of false and fraudulent pretenses and representations, the money owned by, and under the custody or control of Vermont Medicaid, in connection with the delivery of and payment for health care benefits, items, and services, in violation of 18 U.S.C. § 1347.

2

## Object of the Conspiracy

9. It was an object of the conspiracy to obtain payment from the Vermont Medicaid Program by submitting false time-sheets to Aris Solutions indicating that RICHARD provided CPCS care services to one of Riff's disabled children when, in fact, he never provided such services.

## Manner and Means

10. It was part of the conspiracy that some combination of GOKEY, RICHARD, and Riff signed approximately forty false time-sheets that were submitted to Aris Solutions indicating that RICHARD had provided personal care services to one of Riff's disabled children at certain times on particular dates when, in fact, he had not provide any such services.

11. It was further part of the conspiracy that, once the false time sheets had been signed, they would be delivered to Aris Solutions as a claim for payment from the Vermont Medicaid Program. As a result of the conspiracy, Vermont Medicaid, through Aris Solutions, issued checks payable to RICHARD totaling more than $40,000 for services that were never performed.

12. It was further part of the conspiracy that when a check for payment was issued to RICHARD by Aris Solutions based upon the submission of the false time-sheets, RICHARD and GOKEY would both endorse the checks so that they would be cashed by the bank where GOKEY maintained an account.

13. It was further part of the conspiracy that once the checks had been cashed, RICHARD and Riff would share the proceeds, and GOKEY would participate in the distribution

of the proceeds.

(18 U.S.C. § 1349)

A TRUE BILL

FOREPERSON

*signature*
_____
TRISTRAM J. COFFIN (MPD)
United States Attorney
Burlington, Vermont
August **5**, 2010